1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                   EASTERN DISTRICT OF WASHINGTON
8
   KATHRYN E. SACKETT,                )   No. CV-12-5062-LRS
9                                      )
                     Plaintiff,        )   **ORDER GRANTING**
10                                     )   **PLAINTIFF'S MOTION FOR**
        vs.                            )   **JUDGMENT,** *INTER ALIA*
11                                     )
   CAROLYN W. COLVIN,                  )
12 Acting Commissioner of Social       )
   Security,                           )
13                                     )
                     Defendant.        )
14 _____   )

15      **BEFORE THE COURT** are Plaintiff's Motion For Summary Judgment

16 (ECF No. 16) and the Defendant's Motion For Summary Judgment (ECF No. 20).

17

18                          **JURISDICTION**

19      Kathryn E. Sackett, Plaintiff, applied for Title II Disability Insurance

20 benefits (DIB) and Title XVI Supplemental Security Income benefits (SSI) on

21 April 3, 2007.  The applications were denied initially and on reconsideration.

22 Plaintiff timely requested a hearing and one was held on June 1, 2010, before

23 Administrative Law Judge (ALJ) Benita A. Lobo via video.  Plaintiff, represented

24 by counsel, appeared and testified at this hearing.  Kelly Roberts testified as a

25 Vocational Expert (VE).  On June 16, 2010, the ALJ issued a decision denying

26 benefits.  The Appeals Council denied a request for review and the ALJ's decision

27 became the final decision of the Commissioner.  This decision is appealable to

28 district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1

## STATEMENT OF FACTS

2    The facts have been presented in the administrative transcript, the ALJ's

3  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.

4  At the time of the administrative hearing, Plaintiff was 39 years old.  She has a

5  high school education and past relevant work experience as a cashier.  Plaintiff

6  alleges disability since July 7, 2006.

7

8

## STANDARD OF REVIEW

9    "The [Commissioner's] determination that a claimant is not disabled will be

10  upheld if the findings of fact are supported by substantial evidence...." *Delgado v.*

11  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a

12  mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975),

13  but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th

14  Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573,

15  576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might

16  accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

17  401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the

18  [Commissioner] may reasonably draw from the evidence" will also be upheld.

19  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348

20  F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a

21  whole, not just the evidence supporting the decision of the Commissioner.

22  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665

23  F.2d 936, 939 (9th Cir. 1982).

24    It is the role of the trier of fact, not this court to resolve conflicts in

25  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

26  rational interpretation, the court must uphold the decision of the ALJ.  *Allen v.*

27  *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

28  ///

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 2**

1    A decision supported by substantial evidence will still be set aside if the

2    proper legal standards were not applied in weighing the evidence and making the

3    decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433

4    (9th Cir. 1987).

5

6                                    **ISSUES**

7    Plaintiff argues the ALJ erred by: 1) improperly rejecting her depression,

8    posttraumatic stress disorder (PTSD), and migraines at Step Two of the sequential

9    evaluation process; 2) improperly rejecting the opinions of her treating and

10   examining medical providers; 3) improperly discounting her credibility regarding

11   her subjective complaints; and 4) failing to identify specific jobs available in

12   significant numbers which are compatible with her functional limitations.

13

14                                **DISCUSSION**

15   **SEQUENTIAL EVALUATION PROCESS**

16   The Social Security Act defines "disability" as the "inability to engage in

17   any substantial gainful activity by reason of any medically determinable physical

18   or mental impairment which can be expected to result in death or which has lasted

19   or can be expected to last for a continuous period of not less than twelve months."

20   42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a

21   claimant shall be determined to be under a disability only if her impairments are of

22   such severity that the claimant is not only unable to do her previous work but

23   cannot, considering her age, education and work experiences, engage in any other

24   substantial gainful work which exists in the national economy. *Id*.

25   The Commissioner has established a five-step sequential evaluation process

26   for determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920;

27   *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one

28   determines if she is engaged in substantial gainful activities.  If she is, benefits are

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

denied.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has severe impairments which include low back pain due to sacroilitis, status-post carpal tunnel release on the right, carpal tunnel syndrome on the left, and fibromyalgia; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work, except no climbing of ladders, ropes and scaffolds; no working at heights or around dangerous machinery; only occasionally stooping, kneeling, crouching and crawling; and only limited grasping and gross manipulation with the left non-dominant hand; 4) Plaintiff's RFC prevents her from performing her past relevant work; and 5) Plaintiff's RFC allows her to perform jobs that exist in significant numbers in the national economy, including usher/ticket taker, interviewer, and receptionist/information clerk.  Accordingly, the ALJ concluded the Plaintiff is not disabled.

**TREATING PHYSICIAN'S OPINION**

It is settled law in the Ninth Circuit that in a disability proceeding, the treating physician's opinion is given special weight because of her familiarity with the claimant and her physical condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998));  *Lester  v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996);  *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995); and *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinion is not contradicted, it can be rejected only with clear and convincing reasons.  *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

1   evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605.  "[W]hen

2   evaluating conflicting medical opinions, an ALJ need not accept  the opinion of a

3   doctor if that opinion is brief, conclusory, and inadequately supported by clinical

4   findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

5       Cheryl Hipolito, M.D., began treating the Plaintiff in January 2008.  (Tr. at

6   pp. 460-63).  Thereafter, Plaintiff continued to see Dr. Hipolito on a regular basis

7   during the next two years, right up to the date of Plaintiff's administrative hearing

8   on June 1, 2010.  Plaintiff saw Dr. Hipolito in May 2008 (Tr. at pp. 557-563); June

9   2008 (Tr. at p. 564); July 2008 (Tr. at p. 566); August 2008 (Tr. at pp. 567-68);

10  January 2009 (Tr. at p. 570); July 2009 (Tr. at pp. 572-73; 575-76); October 2009

11  (Tr. at p. 577-78); November 2009 (Tr. at pp. 579-80); December 2009 (Tr. at pp.

12  581-83); January 2010 (Tr. at pp. 584-85); February 2010 (Tr. at p. 586); and

13  April 2010 (Tr. at pp.  617-20).

14      In May 2010, at the request of Plaintiff's counsel, Dr. Hipolito answered a

15  series of questions related to Plaintiff's medical condition.  Dr. Hipolito indicated

16  she agreed that Plaintiff needed to "lay down at least two to three hours out of any

17  eight consecutive hours to get relief from pain and/or to cope with pain, chronic

18  headaches, and/or side effects of medication."  Dr. Hipolito also agreed that it was

19  reasonable for the Plaintiff to occasionally need a wheelchair and to more

20  frequently use a cane.  Finally, asked whether any of six listed categories most

21  accurately described the Plaintiff's "physical capacity relative to the possibility of

22  maintaining full-time employment," Dr. Hipolito checked the box indicating she

23  did "not believe that this patient is capable of performing any type of work on a

24  reasonably continuous, sustained basis."  (Tr. at pp. 629-630).  The ALJ rejected

25  Dr. Hipolito's assessment of Plaintiff's physical limitations, giving it no weight

26  "because her opinions were mere responses to questionnaires and lacked any

27  supporting objective findings."  (Tr. at p. 20).

28  ///

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 6**

1    Initially, it appears that Dr. Hipolito's assessment of Plaintiff's physical

2    limitations was not contradicted by any other physician who treated or examined

3    Plaintiff.  The ALJ did not cite to any such contradictory opinion in her decision.

4    Accordingly, "clear and convincing" reasons needed to be offered by the ALJ in

5    order to reject Dr. Hipolito's assessment.

6    In her summary judgment memorandum, the Commissioner notes that

7    Plaintiff takes issue with the ALJ's reason for rejecting Dr. Hipolito's assessment

8    "by pointing to evidence that she believes is substantial objective findings to

9    support Dr. Hipolito's opinions."  (ECF No. 20 at p. 13).  The Commissioner

10   contends Dr. Hipolito "did not cite to any of the evidence Plaintiff points to as a

11   basis for her opinions."  (*Id*.).  While it is true that Dr. Hipolito did not cite to any

12   of this evidence in her May 2010 assessment completed pursuant to the questions

13   posed to her by Plaintiff's counsel, her chart notes over the course of the preceding

14   two years of treatment are replete with references to objective findings regarding

15   the Plaintiff's physical impairments.  These are the findings Plaintiff points to in

16   her summary judgment memorandum (ECF No. 17 at p. 15): "spine tenderness,

17   paraspinal muscle tenderness, limping, antalgic gait, limited range of motion,

18   swelling of the hands and CT images of the spine."

19   On Plaintiff's first visit to Dr. Hipolito in January 2008, the doctor noted

20   that Plaintiff had "another" CT scan of the lumbar spine in 2006 which "showed

21   again a shallow, broad-based posterior protrusion of L4-L5 and L5-S1 resulting in

22   mild foraminal stenosis bilaterally at both levels;" "mild lateral recess stenosis at

23   the level of L4-L5;" "mild disc bulging at L3-L4 and mild facet arthropathy at L4-

24   L5 and L5-S1."  On a number of Plaintiff's subsequent visits, Dr. Hipolito would

25   refer to these degenerative changes in Plaintiff's spine.  (Tr. at pp. 580, 581, 583,

26   584, 586 and 619).  On January 29, 2008, Dr. Hipolito reported as follows:

27           [Plaintiff's] [b]ack examination showed positive for tenderness
             of the lumbosacral spine with paraspinal tenderness on palpation.
28           Negative for straight leg raising test.  Positive for limitation of

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 7**

1   motion on spinal forward flexion, hyperextension and lateral
2   bending due to pain.  There is note of an antalgic gait with
    favoring of the right lower extremity.

3   (Tr. at p. 462).  The same results were reported as a result of back examinations

4   conducted on October 26, 2009, December 8, 2009, December 28, 2009, and

5   February 22, 2010.  (Tr. at pp. 578, 581, 583 and 586).

6       In sum, the ALJ did not offer "clear and convincing" reasons supported by

7   substantial evidence in the record to reject the uncontradicted opinion of Dr.

8   Hipolito regarding functional limitations arising from Plaintiff's physical

9   impairments.  Dr. Hipolito's responses to counsel's questionnaire were supported

10  by objective findings.  They were not "mere responses [which] lacked any

11  supporting objective findings."

12

13  **CREDIBILITY**

14      In her decision, the ALJ referred to Dr. Hipolito's February 22, 2010

15  examination and stated:

16          At this point, now six years after the alleged onset date of
            disability, the claimant had still not returned to work and no
17          medical treatment was being offered other than pain
            management.  Indeed, despite the pain complaints, no
18          medical source recommended surgery.  Additionally,
            again, no medical source assigned any functional limitations.
19
20  (Tr. at p. 20).

        The Commissioner concedes the ALJ erred in rejecting Plaintiff's pain
21
    complaints because no medical source recommended surgery.  (ECF No. 20 at p.
22
    21).  At the hearing, the Plaintiff testified surgery was not an option because of the
23
    possibility that cysts in her back would burst.  (Tr. at p. 35).  The medical record
24
    confirms the existence of these cysts.  (Tr. at pp. 339 and 367).  It is also untrue
25
    that as of February 22, 2010, "no medical source assigned any functional
26
    limitations."  On March 3, 2008, Dr. Hipolito completed a Washington State
27
    Department Of Social & Health Services "Physical Evaluation" form indicating
28

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 8**

that Plaintiff's chronic back pain with lumbar spondylosis was of "marked" severity in that it would "very significantly" interfere with her ability to sit, stand, walk, lift, handle and carry.  Dr. Hipolito also indicated that Plaintiff's migraine headaches were of "marked" severity and would "very significantly" interfere with her ability to sit, stand, walk, lift, handle, carry, see, communicate and understand or follow directions.  Dr. Hipolito further indicated that Plaintiff's ability to balance, bend, climb, crouch, handle, kneel, push, sit and stoop would be "severely limited" because it would aggravate her pain.  (Tr. at pp. 467-68).

Dr. Hipolito never suggested that Plaintiff was malingering or engaging in any kind of "pain behavior."  Also, Dr. Hipolito never found that Plaintiff was engaging in drug seeking behavior.  In her December 8, 2009, Dr. Hipolito noted the following:

> [Plaintiff] denies drug abuse or misuse.  There has been no documentation of illicit substances in her urine drug screen.  The patient denies obtaining drugs from other sources.  No selling of narcotics and no obtaining narcotics from the street.  She was advised to undergo drug or chemical dependency evaluation.  She went to Advocate for Wellness in Kennewick, Washington and the patient was not found to have chemical dependency; although she did have changes in tolerance, due to the long history of being on pain medication or narcotics.

(Tr. at p. 581).  (See also Tr. at p. 627).

An ALJ can only reject a plaintiff's statement about pain and physical limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so.  *Smolen,* 80 F.3d at 1283-84.  The record contains no affirmative evidence of malingering and the ALJ did not offer "clear and convincing" reasons for rejecting Plaintiff's subjective pain complaints which are consistent with the opinions of Dr. Hipolito regarding Plaintiff's functional limitations.  Contrary to the ALJ's finding (Tr. at p. 21), Dr. Hipolito's opinions were based on more than "minimal" objective findings.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 9**

**VE HYPOTHETICAL**

At the administrative hearing, Plaintiff's counsel asked the VE to assume Plaintiff was limited to sedentary work with postural limitations of occasional balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, sitting and stooping, and to "further assume a need for recumbency in which a person needs to lay down at unscheduled times during any eight consecutive hours or at least two hours in eight consecutive hours." (Tr. at p. 51). The VE indicated these limitations would preclude the Plaintiff from performing all jobs. (*Id*.). The limitations set forth in counsel's hypothetical are consistent with those opined by Dr. Hipolito which the ALJ improperly rejected. Because the Plaintiff cannot perform any jobs existing in significant numbers in the national economy, she is disabled and has been so disabled since the amended onset date of July 7, 2006.

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious claims at an early stage in the sequential evaluation process. *Smolen*, 80 F.3d at 1290, citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis* screening device to dispose of groundless claims"). "[O]nly those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion). "Basic work activities" are the abilities and aptitudes to do most jobs, including:

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b); 416.921(b).

Based on the foregoing discussion with regard to the opinions of Dr. Hipolito concerning Plaintiff's physical impairments and resulting functional limitations, and Plaintiff's subjective complaints of pain, it is unnecessary to determine whether the ALJ erred in deeming Plaintiff's depression and PTSD to be non-severe impairments.  Based on that same discussion, however, it is apparent that the ALJ's finding that Plaintiff's migraines are not "severe" is not supported by substantial evidence in the record.

## CONCLUSION

Plaintiff's Motion For Summary Judgment (ECF No. 16) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 20) is **DENIED**.  Pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision denying benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner for payment of benefits to the plaintiff in accordance with the applicable law.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this ___15th___ of October, 2013.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**